# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* | )<br>)<br>)   Case No. 3:20-mc-00799<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:


The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
 ❐ evidence of a crime;
 ❐ contraband, fruits of crime, or other items illegally possessed;
 ❐ property designed for use, intended for use, or used in committing a crime;
 ❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

 *Code Section*                                     *Offense Description*


The application is based on these facts:


 ❐ Continued on the attached sheet.
 ❐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: _____                                                *Goulee Gim Gou*
                                                                                         *Judge's signature*

City and state: _____                                   _____
                                                                                         *Printed name and title*

**Attachment A**

**Parcel to be Searched:**

The following U.S. Postal Service parcel, presently in the possession of the U.S. Postal Inspection Service at the USPIS Portland Domicile, 7007 NE Cornfoot Dr., Portland, OR 97218:

**DESCRIPTION OF THE SUBJECT PARCEL**

**Subject Parcel**

| | |
|---|---|
| U.S. Priority Mail parcel number: | EJ395412546US |
| Sender name and address: | M. Mitchell<br>PO Box 16373<br>Tampa, FL 33687 |
| Recipient name and address: | Jarrod Lynwood<br>1405 Seventh Ave<br>Gold Hill, OR 97525 |
| Parcel Type: | USPS Express Mail Mailing Box |



**Attachment B**

**Particular Things to be Seized:**

The following controlled substances, records, documents, and items that constitute evidence, contraband, fruits, and/or instrumentalities of violations of the following federal criminal statutes involving the unlawful use of the U.S. mails with intent to distribute controlled substances and proceeds of the unlawful use of the U.S. mails with intent to distribute controlled substances and proceeds of unlawful activity in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846; and 18 U.S.C. § 1952(a)(1), and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853:

1. Controlled substances, including marijuana, methamphetamine, cocaine, heroin, and any other illegal controlled substance listed in DEA Scheduling of Controlled Substances.
2. Currency and proceeds of controlled substance trafficking.
3. Packaging material and contents.
4. Any items of identification, records, correspondence, accounts, ledgers, pay-and-owe sheets, or other documents associated with the manufacture, distribution, or possession of controlled substances or the possession or distribution of currency and proceeds of controlled substance trafficking, or with the laundering of monetary instruments.

DISTRICT OF OREGON, ss:        AFFIDAVIT OF DAVID HARDIN

## Affidavit in Support of an Application Under
## Rule 41 for a Warrant to Search and Seize Evidence

I, David Hardin, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Postal Inspector with the United States Postal Inspection Service (USPIS) and have been since October 2018. I am currently assigned to the Portland, Oregon Domicile Office of the USPIS. As a Postal Inspector, I am empowered by 18 U.S.C. § 3061 to conduct investigations and to make arrests for offenses against the United States. As part of my duties, I investigate incidents where the United States mail system is used for the purpose of transporting non-mailable matter, including controlled substances such as marijuana, cocaine, methamphetamine, and heroin, as well as proceeds of the sale of controlled substances. In December 2008, I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (F.L.E.T.C.) in Glynco, Georgia. From November 2008 to February 2018, I served as a U.S. Secret Service Special Agent. Prior to that, I served five years in the U.S. Navy as an Intelligence Officer, achieving the rank of Lieutenant. In January 2020, I completed an Advanced USPIS Investigations training course on Prohibited Mailings involving narcotics.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of U.S. Priority Mail Express parcel EJ395412546US (hereinafter "**Subject Parcel**"), for evidence, contraband, fruits, and instrumentalities of violations of the federal criminal statutes involving the Unlawful Use of the U.S. Mail with Intent to Distribute Proceeds of Unlawful Activity, in violation of 18 U.S.C. §

1952(a)(1); the Unlawful Use of a Communication Facility (U.S. Mail) to Distribute Controlled Substances, in violation of 21 U.S.C. § 843(b), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; the Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853.  The parcel is presently in the possession of the U.S. Postal Inspection Service at the USPIS Portland Domicile, 7007 NE Cornfoot Rd., Portland, OR 97218, as described in Attachment A.  As set forth below, I have probable cause to believe that such property and items, as described in Attachment B, will be found in the **Subject Parcel**, as described in Attachment A.

   3.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, and information gained through my training and experience.

## Applicable Law

   4.  Title 18 U.S.C. § 1952(a)(1) provides that it is unlawful to use the mail to distribute the proceeds of any unlawful activity. Title 21 U.S.C. §§ 841 and 846 provide that it is unlawful to distribute or conspire to distribute controlled substances.  Title 21 U.S.C. §§ 843(b) and 846 provide that it is unlawful to use a communication facility, including the U.S. Mail, to distribute or conspire to distribute controlled substances.  Title 21 U.S.C. § 853 provides for the criminal forfeiture of proceeds and instrumentalities related to drug trafficking.

**Training and Experience on Controlled Substances Sent Through the U.S. Mail**

5. I know from my training and experience that drug traffickers frequently use U.S. Postal Service Priority Mail Express and Priority Mail services to ship controlled substances, including marijuana, cocaine, heroin, and methamphetamine. I know from my training and experience that illegal drug recipients often use U.S. Postal Service Priority Mail Express and Priority Mail services to ship the proceeds of the illegal sale of controlled substances, or moneys used or intended to be used to facilitate the illegal sale of controlled substances, in cash, or other controlled substances, to suppliers of controlled substances. I know from training and discussions with other law enforcement officers that these controlled substances, proceeds of the illegal sale of controlled substances, and funds related to the facilitation of the illegal sale of controlled substances are often found during parcel investigations and interdictions.

6. Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know Oregon is a marijuana source state for the mailing of controlled substances to destination locations across the United States. Current Oregon state laws permitting the recreational and medical growth, purchase, and possession of marijuana provide individuals with significant quantities of marijuana, which can be illegally mailed to other states where marijuana is illegal and less available. Accordingly, marijuana sales are substantially more profitable outside the state of Oregon than they are inside the state of Oregon. I know from my training and experience that controlled substances, especially marijuana, are frequently mailed from Oregon to other states and that cash payments are mailed back to Oregon drug suppliers in return.

7. Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators often exist when drug

traffickers use the U.S. mails to ship controlled substances, proceeds of the sale of controlled substances, or funds to facilitate the sale of controlled substances from one location to another.

8. Drug traffickers use U.S. Postal Service Priority Mail Express and Priority Mail services because of the reliability of delivery, speed of delivery, low cost, the customer's ability to track the package's shipment online, as well as the low risk of detection by law enforcement. Shippers using U.S. Postal Service Priority Mail Express and Priority Mail services pay for the benefit of being able to confirm the delivery of the parcel by checking the U.S. Postal Service website or calling a toll-free number.

9. I know from my training and experience that U.S. Postal Service Priority Mail Express is used primarily for business-related mailings. Unlike typical U.S. Postal Service Priority Mail Express business mailings, which usually have typed labels, packages containing controlled substances, proceeds, and/or facilitation funds often have handwritten address information. The handwritten label on U.S. Postal Service Priority Mail Express packages containing controlled substances and/or proceeds usually does not contain a business account number and/or credit card number. This is an indication that the sender likely paid cash. A credit card or business account number would better enable law enforcement officers to connect the package to identifiable individuals. I further know that drug traffickers who use U.S. Postal Service Priority Mail Express services often either waive or do not request a recipient signature upon delivery of the mail parcel. This can allow the parcel to be delivered without the addressee or the addressee's agent having to sign for the parcel, contingent upon the parcel being left in a secure location at the address.

10. I know from my training and experience that drug traffickers who mail controlled substances, and the drug purchasers who send payment in the form of cash or other drugs, often

use false or incomplete information in labeling the parcels. In this way, drug traffickers can distance themselves from the package containing controlled substances, the proceeds of the sale of the controlled substances, or facilitation funds in the event the package is intercepted by law enforcement.

11.     I know from my training and experience that drug traffickers who mail controlled substances, proceeds of the illegal sale of controlled substances, and facilitation funds are often aware that parcels are inspected by trained canines. Accordingly, drug traffickers often attempt to wrap their parcels, and the contents of their parcels, in a manner they believe will disguise the odor and contents of the items in the parcels. In order to conceal the distinctive smell of controlled substances from certified controlled substance detection canines, these packages are sometimes sealed with the use of tape around the seams. Also, the parcels often contain other parcels which are carefully sealed to prevent the escape of odors. Sometimes perfumes, coffee, dryer sheets, tobacco, or other strong-smelling substances are used to mask the odor of the controlled substances, proceeds of the illegal sale of controlled substances, and/or facilitation funds being shipped.

## Statement of Probable Cause

12.     On August 4, 2020, I went to the U.S. Postal Service Portland Processing and Distribution Center/Facility (PDC/PDF), located at 7007 Cornfoot Rd, Portland, OR 97218 as part of my regular investigatory duties. I reviewed parcels for delivery in Oregon that were mailed from other states. I saw that the **Subject Parcel** was addressed from "M. Mitchell, PO Box 16373, Tampa, FL 33687" to "Jarrod Lynwood, 1405 Seventh Ave, Gold Hill, OR 97525." The parcel weighed 5 pounds, 5.6 ounces, the scheduled date of delivery was August 6, 2020 before 3 p.m., and the mailer paid $78.10 in cash to purchase the postage. I noticed the mailing

Page 5 – Affidavit of David Hardin

label was handwritten and it appeared it was addressed from a private individual to another private individual. An image of the **Subject Parcel** is provided below:



13. I conducted open source and law enforcement searches and determined the sender, "M. Mitchell," does not associate to the address. A "Michell Mitchell" associated to the address in 2016 but has six more current associated addresses at this time. In addition, the telephone number listed on the sender's information returns back to an unlisted wireless caller. I conducted open source and law enforcement searches and determined the recipient, "Jarrod Lynwood," does not associate with the address. The telephone number listed on the recipient's information returns back to a "Brittany Pitts" in Largo, Florida.

**Page 6 – Affidavit of David Hardin**

14. I reviewed USPS business records and determined on July 27, 2020 the recipient address received a U.S. Priority Mail Express parcel weighing 8 pounds from Tampa, Florida.

15. On August 4, 2020, Portland Police Bureau H.I.T. Officer C. Verbout, a Certified Controlled Substance Dog Handler and his certified controlled substance detection dog Rex, responded to the USPIS Portland Domicile located at 7007 NE Cornfoot Dr., Portland, OR 97218. I prepared a "line" of parcels of similar size and appearance to the **Subject Parcel**. H.I.T. Officer Verbout and his certified controlled substance detection dog Rex "proofed" the line and the area surrounding the line. Proofing a line of parcels is the process by which a controlled substance dog handler deploys a controlled substance detection dog on a line of control parcels to confirm that none of the control parcels are emitting the odor of controlled substance the controlled substance detection dog is trained to detect. Officer Verbout stated Rex did not alert to the presence of the odor of controlled substance on the parcels in the line or the area surrounding the line at that time. Officer Verbout and Rex left the immediate area and I put the **Subject Parcel** in the line in a position unknown to Officer Verbout and Rex. Officer Verbout returned to the line and deployed Rex on the line of parcels. Officer Verbout told me Rex alerted, in the manner he is trained, to the presence of the odor of controlled substance on the **Subject Parcel**. Rex did not alert to any of the other parcels in the line. Officer Verbout and Rex's qualifications, training, and training accuracy rate are set forth in Exhibit A, attached hereto and incorporated herein.

16. On August 4, 2020, at 08:36 a.m., I scanned the **Subject Parcel**, "Seized by Law Enforcement" in the USPS Product Tracking and Reporting (PTR) system. The PTR system allows customers to check and/or receive updates to the progress of parcels as they travel

**Page 7 – Affidavit of David Hardin**

through the USPS delivery system. The "Seized by Law Enforcement" entry tells the customer to contact the USPIS to make inquiries about the status of seized parcels.

17. Based on my training and experience, the **Subject Parcel** appears to contain drugs or drug proceeds, based on the positive canine examination results detailed above, the package weight, the recipient address, sender information and other observations discussed in more detail above. I have probable cause to believe, and do believe, that a search of the **Subject Parcel** will yield evidence of contraband, fruits, and instrumentalities of violations of the federal criminal statutes described above.

## Conclusion

18. Based on the foregoing, I have probable cause to believe, and I do believe, that the **Subject Parcel** more completely described in Attachment A, contains evidence of contraband, fruits, and instrumentalities of violations of the federal criminal statutes involving the Unlawful Use of the U.S. Mail with Intent to Distribute Proceeds of Unlawful Activity, in violation of 18 U.S.C. § 1952(a)(1); the Unlawful Use of a Communication Facility (U.S. Mail) to Distribute Controlled Substances, in violation of 21 U.S.C. § 843(b), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; the Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to commit this offense, in violation of 21 U.S.C. § 846; and criminal forfeiture related to drug trafficking, as provided in 21 U.S.C. § 853. As set forth above, I have probable cause to believe that such property and items, as described in Attachment B, will be found in the **Subject Parcel** described in Attachment A. I therefore request that the Court issue a warrant authorizing the search of the **Subject Parcel** described in Attachment A for the items listed in Attachment B and the seizure of any such items found.

**Page 8 – Affidavit of David Hardin**

19. Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Sarah Barr and AUSA Barr advised me that, in her opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

_____
DAVID L. HARDIN
US Postal Inspector
United States Postal Inspection Service

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __6:18__ pm ~~a.m./p.m.~~ on ___August 2, 2020___.

*Youlee Yim You*
_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Page 9 – Affidavit of David Hardin**

# EXHIBIT: __A__

August 4th, 2020

To Whom It May Concern:

I, Officer Christopher Verbout, attest the following to be true and accurate to the best of my knowledge and belief, based upon my experience handling K9 Rex and a review of my training and deployment records.

*POLICE TRAINING*

I, Christopher Verbout, am employed as a police officer with the Portland Police Bureau and have been a certified law enforcement officer within the state of Oregon in excess of sixteen years (16). I currently hold an Intermediate Police Officer Certificate from the Oregon Department of Safety, Standards and Training (DPSST). I have been assigned to the Narcotics and Organized Crime Unit (NOC) since March of 2011, where my job assignment includes but is not limited to the investigation into violations of the Oregon Uniform Controlled Substance Act 475.846, 475.850, 475.854, as well as federal controlled substances violations. My training and experience include ten (10) weeks of the Oregon Basic Police Academy in Monmouth, Oregon and sixteen (16) weeks of the Portland Police Bureau Advanced Academy. I have attended and passed the eighty (80) hour course from the Drug Enforcement Administration (DEA) Basic Drug Investigation Course. In addition I have attended numerous conferences and classes in Oregon, Washington and California related to narcotics investigations. During these conferences and classes I have received in excess of two-hundred and eighty (280) hours of additional training in drug investigations including undercover operations and cellphone forensics. I have participated in over thirty (30) DarkNet drug and DarkNet drug overdose investigations. These DarkNet investigations involve narcotics being ordered on-line and drugs being shipped across the world. I have instructed hundreds of other state and local Law Enforcement, Federal Law enforcement, Deputy District Attorney's, and Assistant United States Attorney's on DarkNet investigations all across the United States. I have assisted in the execution of at least two-hundred and fifty (250) search warrants for illegal controlled substances and have made or have assisted in the arrest of at least one- hundred (100) persons for controlled substance violations. Since October of 2016 I have been assigned to the HIDTA Interdiction Taskforce (HIT). The primary responsibility for HIT team is the interdiction of narcotics and drug proceeds transported by couriers through the Portland International Airport, Amtrak train stations, various interstate bus lines and the highways and byways through the Portland Metropolitan area. HIT is also responsible for the interdiction of narcotics and drug proceeds carried through common couriers, such as FedEx, UPS, DHL and other parcel and freight delivery companies.

*INITIAL K9 TRAINING ACADEMY AND BACKGROUND:*
In June of 2020 I was selected as a drug dog handler for the Narcotics and Organized Crime Unit. With the Portland Police Bureau Rex and I received twenty-two (22) hours of drug detection training supervised by Sgt. Kevin Hogan with the Portland Police Bureau Narcotics and Organized Crime K-9 Unit. I received Rex from Officer Scott Groshong with the Portland Police Bureau Narcotics and Organized Crime Unit when Officer Scott Groshong retired as a dog handler. I passed the Oregon Police Canine Association (OPCA) Detection Dog Certification Test certifying

**Exhibit A - Page 1 of 5**

us as a Narcotics Detection Dog Team in the State of Oregon. We took this test and successfully passed it on July 29th, 2020.

### *POLICE DRUG DETECTION DOG REX:*

Beginning in June of 2020 I began working with narcotics canine partner Rex. Rex is a nine year old pure bred Belgian Malinois originally purchased from Worldwide Canine, Inc. in Spring Branch, Texas by Gilliam County, Oregon in November of 2012. Deputy Richard Brown of the Gilliam County Sheriff's Office selected Rex as a pre-trained narcotics detection canine. Deputy Brown told Officer Groshong that he successfully completed a 2 1/2week initial training school with Rex and successfully passed Worlwide's certification on November 21st, 2012. Rex has been trained as a passive alert detection dog, which means he sits as his final response at the source of the drug odors which he has been trained to find. Rex has been trained to detect the odors emanating from cocaine, crack cocaine, heroin, marijuana and methamphetamine. Rex has been trained to reliably locate these drug odors in all types of environments through exposure during his initial training, maintenance training and real life deployments.

In November of 2015 the Portland Police Bureau acquired Rex from Gilliam County, Oregon due to the Oregon law change surrounding the legalization of user amounts of marijuana. From November of 2015 through June of 2020 Officer Scott Groshong worked as a team on the Portland Police Bureau's High Intensity Drug Trafficking Area (HIT) team. The Portland Police Bureau's High Intensity Drug Trafficking Area (H.I.D.T.A.) Taskforce addresses trafficking of significant amounts of narcotics and their proceeds from source states throughout the United States. The H.I.D.T.A. Taskforce is a federally funded team that focuses on the trafficking of narcotics and their related proceeds via high usage traveling methods. These methods of trafficking include travel by air, bus, and train as well as shipping via the United States Postal Service and private shippers such as FedEx and the United Parcel Service. Officer. Officer Scott Groshong is an Oregon Police Canine Association certified trainer.

### *CERTIFICATIONS PASSED:*
Deputy Richard Brown and K9 Rex first passed the Oregon Police Canine Association's Certification Test on January 23, 2013 and subsequently passed an additional three times in 2013 and 2014. Officer Groshong and Rex were required by Portland Police Bureau Narcotics and Organized Crime Unit policy to take and pass the Oregon Police Canine Association (OPCA) Detection Dog Certification Test twice each year. On November 10, 2015 Officer Groshong and Rex passed their first OPCA Drug Detection Dog Certification Test together and have subsequently passed this test at least 7 additional times. Officer Scott Groshong and Rex's most recent OPCA Certification Test was passed on June 6th, 2020. The OPCA Certification Test is recognized in the Oregon Revised Statutes (ORS) and by passing it K9 Rex has been recognized as a "Police Animal" under the ORS definition. Passing the test also certified Rex and Officer Groshong as a Drug Detection Dog team. In addition to the OPCA Certification Test, Officer Groshong and K9 Rex passed the California Narcotics Canine Association (CNCA) Certification Test on April 6, 2019.

**Exhibit A - Page 2 of 5**

On July 29th, 2020 Rex and I passed the Oregon Police Canine Association's Certification Test certifying us as a Narcotics Detection Dog Team In the state of Oregon.

*OPCA CERTIFICATION CRITERIA:*

The OPCA Drug Detection Dog Certification Test is designed as a performance based test which specifically measures the team's abilities to locate the source(s) of multiple drug odors in testing areas that reflect, as closely as possible, real deployment environments. It is a single blind test designed to measure the team's ability to clear a controlled negative testing areas, or blanks, which is devoid of drug odor without false positives. Only real drugs are used in the test and they must be five grams or larger. Since the test is conducted in real life environments, distracting odors, masking odors and other proofing odors are naturally present in the testing environments. The teams must search three rooms/buildings – one of which is an unknown blank. They must search three vehicles – one of which is an unknown blank. They must search ten pieces of luggage or parcels – eight of which are blanks. They must search an open area which includes one drug odor.

The Certification Test is quite difficult and controls for false positives and handler cues through the inclusion of the controlled negative testing areas, blind finds and the presence of the distracting, masking and proofing odors. The failure rate for testing teams can be over 30 percent. The handler does not know the number or location of the drugs hidden in the testing areas – or the areas which are blanks. The test is designed to stress the handler to measure the dog's proclivity to offer false positives, false negatives or other strange behaviors under handler stress. In order to pass OPCA Certification testing, the team must score 100 percent in both Phase One (odor recognition) and Phase Two (comprehensive assessment). To score 100 percent the team must successfully locate all of the hidden drug odors in both phases of the test – without alerting to any areas where drugs are not hidden.

*MAINTENANCE TRAINING:*

Rex's maintenance training is ongoing with OPCA trainers and handlers. Normal maintenance training typically occurs on a weekly basis. Officer Christopher Verbout gets together with various OPCA Trainers and handlers and we set training problems for each other. This is done so that training duplicates real life – where the handler is doing the training problem 'blind' (i.e. the handler does not know where the drugs are hidden or if the training area is a blank). Training is conducted in all types of vehicles, all kinds of buildings/rooms, and various open areas and on both luggage and parcels/packages.

The maintenance training includes proofing odors, masking odors and unknown blanks which are all designed to measure or prevent false positives and handler cues respectively. In my training and experience, searching unknown blanks and blind drug hides are the single best way to prevent handler cuing of the dog. If the handler does not know where the drugs are hidden he cannot cue his dog into locating them. If the handler does not know the training area is a blank it measures the team's performance in clearing the area without any false positives.

The OPCA seminars provide real life scenario based training and exercises designed to challenge and improve the team. The seminars provide training venues that are new to the team and all the drug finds are done blind. The seminars provide the team an opportunity to run through extreme proofing, extreme masking, large drug quantities and other challenging exercises. Rex has

**Exhibit A - Page 3 of 5**

performed at a nearly perfect level in all maintenance training exercises and during certification testing. If a performance issue were to arise in training, the issue would be addressed in that episode, in the following maintenance training episode(s) and would continue until the problem is extinct.

Ongoing maintenance training includes regular currency training. Currency training follows well established protocols which ensure that alerts to currency are the results of drug odor contaminants only. This is accomplished by regularly exposing Rex to circulated and uncirculated U.S. currency. Uncirculated U.S. currency is used to prove that Rex does not alert to the unique odors from the ink, dyes, and paper materials used by the U.S. Mint in the manufacturing of currency. Circulated currency is used to prove that Rex does not alert to the myriad of contaminants that can be found on bills in circulation. In training, Rex does not alert to these proofing odors proving that Rex does not alert to currency in circulation. These training protocols ensure that alerts by Rex to currency in the field are dispositive evidence that the level of drug odor contamination on the currency is higher than that of currency in circulation.

Officer Groshong and Rex had over 661 hours of documented drug dog training which includes over 2,592 searches. Of those 2,592 searches Officer Groshong documented only three unconfirmed alerts in training- where the reason for the behavior was either misinterpreted as an alert by the handler or some other un-confirmable stimuli prompting this behavior. Rex accurately locates and alerts to all the hidden drug odors in training over 99 percent of the time. When Officer Groshong and Rex missed a hidden drug in training they diagnose the issue and solved it before leaving the search area. Officer Groshong has never noted any injury, illness, or other circumstance that has detracted from Rex's accuracy or ability to locate and alert to drug odor.

Rex and I have 22 hours of documented drug dog training which includes 107 searches. Of those 107 searches I documented 0 unconfirmed alerts in training-where the reason for the behavior was either misinterpreted as an alert by the handler or some other un-confirmable stimuli prompting this behavior. Rex accurately locates and alerts to all the hidden drug odors in training 100% of the time. When Rex missed a hidden drug in training we diagnose the issue and solved it before leaving the search area. I have never noted any injury, illness, or other circumstance that has detracted from Rex's accuracy or ability to locate and alert to drug odor.

*DEPLOYMENT HISTORY WITH OFFICER GROSHONG:*
Since November of 2015, Officer Groshong has deployed Rex over 789 times and Rex had alerted on 456 of them – resulting in an alert to deployment rate of 51.5%. These deployments include assisting in residential search warrants, vehicle deployments, consent searches and many luggage, parcel and area searches. More specifically, since November 2015, Officer Groshong and Rex had been deployed 153 times on vehicles and has alerted to 42 of them – resulting in a vehicle alert rate of 27.4%. Of these 456 alerts in 789 deployments, 453 of these alerts have been corroborated – resulting in an alert to find rate of over 99% percent. Rex has proven himself to be very reliable in locating hidden narcotic odors, including documented finds concealed in clothing, suitcases, duffel bags, packages, hidden compartments in vehicles, and concealed within residences.

*DEPLOYMENT HISTORY:*

**Exhibit A - Page 4 of 5**

Since June of 2020 I have deployed Rex 7 times and Rex as alerted 5 times-resulting in an alert to deployment rate of 71.4%. These 7 deployments were completed while working a targeted interdiction mission and conducted on parcels. More specifically since June of 2020 I have deployed Rex 0 times on vehicles.

In summary, I believe that Rex has an extremely high reliability rate in that he does not alert on every deployment, but rather, only when drug odor is present. Rex has consistently demonstrated his ability to locate drug odors in all types of environments and conditions. With respect to Rex's deployment and alert in this particular case, I did not detect any injuries, illnesses, or other circumstances that would detract from Rex's accuracy.

_____
Affiant: Officer Chris Verbout #44441

Officer Christopher Verbout #44441-Drug Dog Handler
Portland Police Bureau, Narcotics and Organized Crime Unit

**Exhibit A - Page 5 of 5**